### COPELAND *v.* THE STATE, EX REL. KAYSER.

HABEAS CORPUS.—*Petition by Mother of Bastard.*—*Apprentice.*—*Orphans Asylum.*—*Special Finding.*—On the hearing of a petition, on the relation of the mother of an illegitimate child, for a writ of *habeas corpus,* to obtain the custody of such child, the judge found specially, that the relatrix was the mother of the child, that she had abandoned it voluntarily, that it then became an inmate of a duly incorporated asylum for orphans, that such asylum had placed the child in the custody of the defendant, that the relatrix had married. and then demanded of the defendant the custody of the child, which was refused, that thereafter the asylum had apprenticed. the child to the defendant, and that both the relatrix and defendant were proper persons to have the custody of the child.

*Held,* that the age of the child should have been found, but that, on such findings of the judge, and the admissions of the parties as to its age, conclusions of law and judgment in favor of the relatrix will not be disturbed by the Supreme Court.

SAME.—*Petition by Wife.*—*Husband an Incompetent Witness.*—*Party.*—*Relatrix.*—*Real Party in Interest.*—The relatrix in such case is the real party in interest, and therefore her husband is incompetent as a witness on her behalf.

From the Judge of the Marion Circuit Court.

*J. S. Tarkington* and *J. M. Butler,* for appellant.

*A. B. Cole* and *T. S. Rollins,* for appellee.

NIBLACK, C. J.—On the 9th day of July, 1875, Mary A. Kayser filed in the office of the clerk of the Marion Circuit Court, being in vacation of said court, her petition for a writ of *habeas corpus,* alleging that, on the 19th day of February, 1870, the petitioner, then an unmarried woman, and bearing the name of Mary A. West, was de-

livered of an illegitimate female child, which afterward took the name of Minnie West; that, on the 3d day of June, 1875, she was duly married to one Godfrey Kayser, with whom she was then living and cohabiting as his wife, in the city of Indianapolis, in said State; that the putative father of said child had never recognized it as his daughter, nor assumed any authority or control over it; that said petitioner, as its mother, was entitled to, and of right should have, the care and custody of said child; that said child was illegally detained and kept from the petitioner by one Elihu Copeland, in Marion county, in said State; that, on the 14th day of June, 1875, the petitioner demanded the possession of said child of the said Elihu Copeland, who refused to surrender said child to her; that the petitioner and her said husband were both able and willing to take care of and properly support said child.

A writ of *habeas corpus* having been in the mean time issued, the said Copeland, on the 12th day of July, 1875, made a return to it before the Judge of the court below at his chambers, admitting the birth and age of said child substantially as alleged in the petition above set out, but averring, that, on the 7th day of February, 1873, the relatrix, being unable and unwilling to care for and maintain said child, had placed it in the Indianapolis Orphans' Asylum, under its former charter name of the Widows and Orphans' Asylum of Indianapolis, as an inmate thereof, and had voluntarily abandoned it to said institution; that, on the 23d day of February, 1873, the president of said institution placed said child in the care and custody of him, the said Copeland, the better to enable it to receive the attention and assistance which the feeble condition of its health required; that said child continued in his, said Copeland's, custody, receiving the most careful attention and assistance, until the 28th day of June, 1875, when it was apprenticed to him by the president of said institution, by indentures of apprenticeship, executed on

that day; that he, the said Copeland, was desirous of retaining the custody of said child, and was both able and willing to make adequate provision for its care and support, and that the petitioner was not a suitable person to have the custody of it.

The Judge thereupon proceeded to hear the evidence in the cause, and, at the request of the defendant, made a special finding, as follows:

"I find the facts to be, that the child, in the complaint and return mentioned, viz., Minnie West, was voluntarily abandoned by her mother, Mary A. West (now Mary A. Kayser), became and was an inmate of the Widows and Orphans' Asylum of Indianapolis (now the Indianapolis Orphans' Asylum), at the city of Indianapolis, county of Marion, and State of Indiana, and was placed in the care and custody of Elihu Copeland, for the purpose, and remained with him and was indentured [as an] apprentice to him, as and in manner and form and at the times, by the persons, and in all things, as in the return of said Elihu Copeland, made to the writ of *habeas corpus* issued herein, fully and particularly appears.

" Also, I find, that said Elihu Copeland is able and desirous to keep said child, as in said return stated, and the allegations stated in his return to said writ, as to his care and custody and treatment of said child, are true, and [that] he is a suitable person to have the custody of said child.

" Also, I find, that said child is the illegitimate child of said Mary A. West; that she (the said Mary) is now the wife of Godfrey Kayser, to whom she was married June 3d, 1875, and is [also] a suitable person to have the custody of said child.

" Also, I find that two weeks before the execution of the indenture of apprenticeship which was executed on the 28th day of June, 1875, as in said return set forth, and of which a copy is attached to said return, marked ' Exhibit A,' the said Mary A. Kayser demanded of said

Copeland *v.* The State, *ex rel.* Kayser.

Elihu Copeland the possession and custody of said child, which demand was by said Copeland refused.

" As conclusions of law from the foregoing facts, I find, that, though said child was voluntarily abandoned, at the time in said return stated, to said corporation, and became and was an inmate of said asylum, and placed in the care and custody of said Copeland as aforesaid, yet, as the demand of said Mary A. Kayser for the possession and custody of said child, of said Copeland, was made before the execution of said indenture, thereby she revoked said abandonment of said child and custody given to said corporation, and that the corporation, or president of the board of directors thereof, had no authority or power thereafter to execute said indenture, so as to give said Copeland any right to the custody of said child

" Also, that the said Mary A. Kayser is entitled to the custody of said child, and said Elihu Copeland is not."

Copeland excepted to each of the conclusions of law thus arrived at by the judge, and moved for judgment in his favor for the custody of said child, upon the facts as found by the judge, which motion was overruled, and to which he also excepted.

He then moved for a new trial, and that motion was also overruled, to which he likewise excepted.

An order, in the form of a judgment, thereupon followed, awarding the custody of said child to the said Mary A. Kayser, and against Copeland for costs.

Errors are assigned here:

1. Upon the sufficiency of the petition;

2. Upon the conclusions of law drawn by the judge from the facts as found by him;

3. Upon the refusal of the judge to render judgment, in favor of the appellant, on the special finding, as above set out;

4. Upon the refusal of the judge to grant a new trial in the cause.

The appellant points out no specific objection to the

petition. We are not therefore required to consider its sufficiency.

We think the special finding of the judge was defective, in not giving the age, or the date of the birth, of the child, but, upon the facts as found by the judge, in connection with the admissions of the parties as to the age of the child, we can not say that the judge erred in his conclusions of law drawn from those facts. 1 Central L. J , p. 51; *Wishard* v. *Medaris*, 34 Ind. 168; *Dalton* v. *The State*, 6 Blackf. 357.

On the trial, Gideon Kayser, the husband of the petitioner, was introduced as a witness in her behalf, and testified as follows, over the objection of the respondent:

"I am the husband of Mrs. Mary A. Kayser, here; I am engaged, working by the day, at roofing; have lived in this city five or six years; am willing my wife should take and rear her child, Minnie West; I have five hundred dollars, earned by me at work."

The admission of this testimony was assigned as one of the causes for a new trial.

Under the statute regulating proceedings on writs of *habeas corpus*, the petitioner was the only real party in interest on her side of the case.

The technical use of the name of the State as a party did not render her any the less the real plaintiff in the proceeding. 2 R. S. 1876, p. 294, sec. 737.

We are of the opinion, therefore, that the testimony of the said Gideon Kayser was improperly admitted, and, being material to some of the questions involved between the parties on the hearing, it follows that a new trial ought to have been granted as prayed for by the appellant.

The judgment is reversed, at the costs of the petitioner, and the cause remanded for a new trial.